MARY E. GAFFNEY, as Administratrix of the Estate of RICHARD GAFFNEY, Deceased, Appellant, *v.* NEW YORK CONSOLIDATED RAILROAD COMPANY, Respondent.

Negligence — death of employee of street railway company caused by starting by another employee of car under which deceased was working — erroneous judgment of nonsuit.

While plaintiff's intestate, who was in the employ of defendant as a conductor, was engaged in adjusting a hose at the forward end of one of its cars, the motorman, without any signal, started the car and ran over or upon him, causing his death. The Appellate Division affirmed a judgment entered upon an order of nonsuit. Upon examination of the testimony and the rules of defendant, *held*, that a jury could have said that the intestate was acting within the line of his duty, and that the motorman ought to have anticipated that in the fulfillment of this duty intestate might get in the position where he was, and, therefore, should have given him timely notice of his intention to move the car.

*Gaffney* v. *N. Y. Consolidated R. R. Co.*, 166 App. Div. 897, reversed.

(Argued December 12, 1916; decided January 9, 1917.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered December 30, 1914, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Frederick S. Martyn* and *Adolph L. Pincoffs* for appellant. The evidence required a submission to the jury of the question of defendant's negligence. (*Kent* v. *J. S. Ry. Co.*, 205 N. Y. 361; *Simons* v. *B. H. R. R. Co.*, 142 App. Div. 36; *Becker* v. *Koch*, 104 N. Y. 394; *President, etc., Man. Co.* v. *Phillips*, 109 N. Y. 383; *Sharp* v. *Erie R. R. Co.*, 184 N. Y. 100; *Wiener* v. *Mayer*, 162 App. Div. 142; *McHugh* v. *M. Ry. Co.*, 179 N. Y. 378; *Curran* v. *L. C. & M. R. R. Co.*, 211 N. Y. 60; *S. L. P. R. R. Co.* v. *Arnold*, 167 N. Y. 368; *Volkmer* v. *M. Ry. Co.*, 134 N. Y. 418; *Matter of Kindberg*, 207 N. Y. 220.)

*D. A. Marsh* and *George D. Yeomans* for respondent. There was no evidence of negligence on the part of the motorman. (*Payne* v. *L. V. R. R. Co.*, 158 App. Div. 105; *Griffin* v. *Manice*, 166 N. Y. 188; *Eaton* v. *N. Y. C. & H. R. R. R. Co.*, 195 N. Y. 267; *Wiwirowski* v. *L. S. & M. S. R. Co.*, 124 N. Y. 420; *McSweeney* v. *Erie R. R. Co.*, 93 App. Div. 496; *Lomer* v. *Meeker*, 25 N. Y. 361; *Kelly* v. *Burroughs*, 102 N. Y. 93; *Hull* v. *Littauer*, 162 N. Y. 569; *Johnson* v. *N. Y. C. & H. R. R. R. Co.*, 173 N. Y. 79; *Abramovitz* v. *Tenzer*, 144 App. Div. 170.)

HISCOCK, Ch. J. While plaintiff's intestate was in the employ of defendant as a conductor and engaged in adjusting a hose at the forward end of one of its cars, the motorman without any signal started the car and ran over or upon him causing his death. The Trial Term and the Appellate Division have thought that there was no evidence which would permit a jury to say that the motorman, and, therefore, the defendant represented by him, was guilty of any negligence which caused the accident. We disagree with this view and think that there

was such evidence. The testimony which leads us to this view would have permitted a jury to find, amongst others, the following facts:

Intestate and his motorman were directed to proceed to one of defendant's electric motor cars which was lying at a terminal "to prepare it to take it out" upon the road for service. A hose was hanging down from the front end of this car which concededly needed adjustment, and in answer to questions whether it was part of the duties of a guard or conductor "if a hose was hanging down to see the hose was fastened on the dummy coupler before the train was taken out," it was answered: "It is a rule of the company that a guard or conductor have to see if everything is right." After reaching the car the intestate got down upon the track under the front end of the car for the purpose of adjusting this hose, and while he was in this position the motorman, without ascertaining his situation and without giving any preliminary signal, started the car and, as already stated, ran upon him, causing injuries which resulted in his death.

Under these circumstances, we think a jury could have said that the intestate was acting within the line of his duty "to see if everything was (is) right" before the car went out, and that the motorman ought to have anticipated that in the fulfillment of this duty intestate might get in the position where he was and, therefore, should have given him timely notice of his intention to move the car. I do not overlook testimony given by the motorman as a witness in behalf of the defendant that it was the duty of some other employee to adjust this hose and that intestate's duties did not include such operation; also that the rule not to start a car except upon bell signals from the conductor only applied when the car was in service on the road and did not govern the movement of a car under the circumstances prevailing here; also that the conductor had told him, the motorman, after they reached the car, "All right; you can pull out to the 'staion when

ready." There are several reasons, in my opinion, why this evidence was not conclusive against plaintiff.

The evidence designed to establish limitations upon the duties of intestate and upon the application of the conceded rule requiring under most circumstances a signal from a conductor before a car was started was rather equivocal and, I think, did not conclusively rebut the evidence already quoted defining the duties of intestate or establish that a starting signal was not required from the conductor in the case of such a car movement as this. Moreover, if we should assume that it did prove inapplicability of the general rule for such signal in this case, that would not relieve the motorman from taking some precaution to warn intestate, if he could be charged as we think he could, with knowledge that the intestate might be where he would be injured by the movement of the car.

And, lastly, all of this evidence of the motorman so far as it tended to establish affirmative facts which would relieve him from the charge of negligence presented a question of credibility for the jury. If intestate's death was caused by negligence, the motorman was the person who was guilty of that negligence. He was of course deeply interested as a matter of common humanity in proving that responsibility for the death of a fellow-employee did not lie at his door, and it was for the jury to say whether testimony which he gave under such inducement and for such purpose should be accepted as truthful or rejected. (*Saranac & L. P. R. R. Co.* v. *Arnold*, 167 N. Y. 368; *Volkmar* v. *Manhattan Ry. Co.*, 134 N. Y. 418.)

We think that the judgment of both courts should be reversed and a new trial granted, with costs to abide event.

CHASE, COLLIN, CUDDEBACK, HOGAN, CARDOZO and POUND, JJ., concur.

Judgment reversed, etc.